UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) |                   |
|---|---|---|
|            Plaintiff, | ) |                   |
| v. | ) | No. 4:07CR216 RWS |
| DAVID DOUGLAS, et al., | ) |                   |
|            Defendants. | ) |                   |

**MEMORANDUM AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

The above matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b). The Defendant filed a motion to suppress physical evidence, and a hearing on the motion to suppress was held on June 14, 2007.

Based upon the evidence adduced at the hearing on the motion to suppress, the undersigned makes the following findings of fact and conclusions of law:

**Findings of Fact**

David King is a police officer with the Metropolitan St. Louis Police Department. On March 7, 2007, he and his partner Det. Burle, were assigned to the area of Leffingwell and Howard Streets in the City of St. Louis. They had been assigned to that area because within a few days prior to March 7, 2007, a number of shootings had taken place in the neighborhood involving rival gang members. These two gangs were the 26-MADS and their rival the JBL Bloods. The shootings had been perpetrated by groups of people traveling together. The officers were in an unmarked police vehicle, but were wearing blue Windbreakers with iridescent markings on them clearly indicating that they were police officers.

When the officers were approaching the intersection of Howard and Leffingwell Streets, they observed a group of five males walking across Howard Street from the south to the north. Det. Burle, who was driving the vehicle, turned the police vehicle onto Howard Street from Leffingwell. As the vehicle approached the group, some of the individuals looked up, saw the vehicle, turned around in an about-face manner, and walked away from the police. The police observed that an individual, who was later identified as the Defendant, was wearing an oversized blue coat, and had his body positioned in a very suspicious way. His left arm was at his side in a normal manner, however, his right arm was gripped closely to the outside of the oversized blue coat and against his ribs as if the arm were in a sling or had been tied to his side.

Because the Defendant was traveling in a group of people and the shootings had been perpetrated by people traveling in groups; the group as a whole had, upon seeing the police officers, immediately turned from them and walked away from them, and because they considered the Defendant's conduct very suspicious because of the very unusual nature in which his arm was positioned, they decided to stop their vehicle and talk to the Defendant and the others to see if they were in anyway related to the gang activity. In order to effect this, King got out of the police car, asked the Defendant to stop, and asked the Defendant if he could speak to him. The Defendant did not acknowledge King's presence at all, and did not turn around or answer him in any way. Instead, the Defendant immediately started running away from the officer through a gangway in a building. The officer chased after the Defendant without touching him, and when the Defendant reached the back of the building, the officer observed the Defendant drop from underneath his oversized blue coat a firearm which appeared to be a rifle. King continued to chase the Defendant, and eventually he was arrested, detained, and handcuffed in the neighboring backyard. When King returned to the area

2

where the gun was dropped, he observed the gun to be a semi-automatic (SKS) assault rifle, with one round of ammunition in the chamber, and twenty-two rounds of ammunition in a large clip in the gun. The Defendant was placed under arrest upon being stopped for the crime of unlawful use of a weapon. The Defendant made no statements.

**Conclusions of Law**

Based on the above facts, the undersigned concludes that Det. King asking the Defendant to stop and asking if he could talk to him was not a seizure of the Defendant. Initially, the undersigned notes that a police officer may approach a person on the street, ask to see the person's identification, and ask other questions of the person without any reasonable suspicion as long as the officer does not demand compliance with his requests or questions. See United States v. Perez-Sosa, 164 F.3d 1082 (8th Cir. 1998). In short there is no detention or seizure when an officer approaches a person in a public place and asks him for identification or other routine questions. See Florida v. Bostic, 501 U.S. 429 (1991). The undersigned concludes that is what occurred in the case now at bar. King got out of his police car, asked the Defendant to stop, and asked the Defendant if he could talk to him. He did not demand compliance with either statement and, therefore, the undersigned concludes that the Defendant was not detained or seized until after his formal arrest following his flight from the officer.

In addition, even if it could be interpreted that the officer demanded compliance with his questions, the Defendant did not submit in any way to the officer's possible demands and, in fact, acted as if the officer was not even present. In California v. Hodari D, 499 U.S. 621 (1991) (a case similar to the case now at bar), the Court held as follows:

> Hodari contends (and we accept as true for purposes of this decision) that Pertoso's pursuit qualified as a "show of authority" calling upon Hodari to halt. The narrow

3

> question before us is whether, with respect to a show of authority as with respect to application of physical force, a seizure occurs even though the subject does not yield. We hold that it does not.

499 U.S. 621, 625, 626.

In Hodari D, police officers gave chase to a fleeing suspect and during the chase, the suspect dropped or threw down a quantity of drugs. Eventually, the suspect was apprehended and arrested. As can be seen from above, the Court held that the defendant was not seized until arrested because he did not yield to the officer's show of authority. The Court held that the drugs had been abandoned and, thus, the Fourth Amendment was not implicated in their seizure. The undersigned concludes that the same situation is present in the case now at bar. The Defendant abandoned the SKS assault rifle by dropping it while fleeing from the officer. Therefore, the weapon was lawfully seized. See United States v. Caballero-Chavez, 260 F.3d 863 (8th Cir. 2001); United States v. Willis, 967 F.2d 1220 (8th Cir. 1992).

The undersigned also concludes that the Defendant's arrest was based on probable cause and was, therefore, lawful. Police officers may arrest a person without a warrant if they have probable cause to believe the person arrested has committed a crime. Gerstein v. Pugh, 420 U.S.103 (1975); Beck v. Ohio, 379 U.S. 89 (1964). Probable cause is a "fluid concept turning on the assessment of probabilities in a particular factual context–not readily or even usefully reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 212, 232 (1983). In a context of a warrantless arrest, all that need be shown is a "fair probability" that a crime has been committed and that the defendant committed it. See Illinois v. Gates, supra. Based on the above law, the undersigned concludes that there was ample probable cause to arrest the Defendant. The Defendant was arrested only after the officer observed him drop an SKS fully loaded firearm in his presence. Thus, the officer personally observed

4

the Defendant commit the felony of unlawful use of a weapon by concealing the weapon, and, therefore, had at least a "fair probability" that a crime had been committed and that the Defendant committed it. Therefore, the arrest was lawful as was the seizure of the weapon.

Alternatively, the undersigned concludes that there was sufficient reasonable suspicion to conduct a Terry stop of the Defendant at the time King asked the Defendant to stop and King asked him if he could talk to him.

In Terry v. Ohio, 392 U.S. 1 (1968), the Supreme Court held that a police officer may briefly stop a person reasonably suspected of criminal activity, question that person briefly to confirm or dispel a reasonable suspicion of the criminal activity, and even conduct a limited pat down search for weapons. Whether or not officers possess reasonable suspicion is to be determined by the court "not in terms of library analysis by scholars, but as understood by those versed in law enforcement." United States v. Atlas, 94 F.3d 447, 450 (8th Cir. 1996). Courts afford a great deal of deference to the conclusions of an officer because the officer may detect criminal activity from conduct that seems innocent to the untrained eye. United States v. Cortez, 449 U.S. 411, 418-22 (1981). The Supreme Court has held that, when considered together, several innocent acts may be enough to show reasonable suspicion. United States v. Sokolow, 490 U.S. 1 (1989). In addition, the following factors may be considered when determining whether or not reasonable suspicion exists: location of the suspects and the suspects' behavior when they become aware of police officers' presence, including driving away from police officers when they observed the police officers; being in an area where "crime is no stranger;" quick movements or movements to conceal items; being in an area where criminal activity, including violent activity, takes place; and an officer's awareness that a nearby service station was recently robbed. See United States v. Abokai, 829 F.2d 666, 668 (8th Cir. 1987);

United States v. Brown, 273 F.3d 747, 748 (7th Cir. 2001 ); United States v. Dawdy, 46 F.3d 1427 (8th Cir. 1995), and United States v. Roggeman, 279 F.3d 573, 579 (8th Cir. 2002).

The undersigned concludes that the case now at bar is similar to several of the cases cited above. In the case now at bar, the officers were patrolling the area because they were aware that in the previous few days there had been several shootings involving firearms which had taken place in the immediate neighborhood involving rival gangs. These shootings had been perpetrated by people traveling in groups. The officers observed the Defendant traveling in a group of five males, and when the group became aware of the police officers, they did a quick about-face and walked away from the police. The officers observed that the Defendant was wearing a large oversized jacket, and had his arm pulled tightly to his chest area in a bent manner, which the officers believed to be unusual and suspicious. The Defendant was holding the arm in a manner in which he might have been concealing a weapon underneath his coat. The undersigned concludes that, at this point, given the seriousness of the crimes recently perpetrated in the neighborhood, their number, and the fact that the Defendant appeared to be concealing something under his coat and was traveling in a group, it was reasonable for the officers to approach the Defendant and ask him a limited number of questions to confirm or dispel their suspicions that the Defendant was involved in illegal gang activity. When the Defendant failed to submit to any authority and fled abandoning the weapon, the undersigned concludes, as stated above, that the officers lawfully seized the weapon and arrested the Defendant.

**Conclusion**

Therefore, the undersigned concludes that the motion to suppress physical evidence should be denied.

* * *

In accordance with the Memorandum above,

**IT IS HEREBY RECOMMENDED** that Defendant Douglas' Motion to Suppress Physical Evidence be **denied**.

Further, the parties are advised that they have until July 27, 2007, in which to file written objections to this recommendation and determination. Failure to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

Finally, the trial of this matter is set on **September 4, 2007 at 9 a.m.** before the Honorable Rodney W. Sippel, United States District Judge, Courtroom 10-South.

                                        /s/ Terry I. Adelman
                                 UNITED STATES MAGISTRATE JUDGE

Dated this 16th day of July, 2007.